**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **YOLANDA G. KERR,**               ) | |
|                                          ) | |
|          **Plaintiff,**               ) | |
|                                          ) | CIVIL ACTION |
| **v.**               ) | |
|                                          ) | No. 07-2604-KHV |
| **DILLARD STORE SERVICES, INC., et al.,**               ) | |
|                                          ) | |
|          **Defendants.**               ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Yolanda G. Kerr brings suit against Dillard Store Services, Inc., Construction Developers, Inc. and Dillard's Inc.  Plaintiff alleges that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, defendants discriminated against her on the basis of race (Count I) and retaliated against her because she complained of race discrimination (Count II).  This matter comes before the Court on Defendants' Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration (Doc. #5) filed January 29, 2008.  For reasons stated below, the Court overrules the motion and orders a trial to determine the existence of the alleged arbitration agreement.

**Factual And Procedural Background**

Plaintiff's complaint and the record evidence which the parties have submitted on the motion to compel arbitration are summarized in pertinent part as follows:

Dillard's Inc. is the owner of Construction Developers, Inc., which in turn owns Dillard Store Services, Inc.  Dillard Store Services conducts business as Dillard's Department Store at the Mission Center Mall in Mission, Kansas and the Oak Park Mall in Overland Park, Kansas.

From March of 2004 until the fall of 2005, plaintiff (a black woman) worked in customer service

at Mission Center. In the fall of 2005, plaintiff transferred to Oak Park. During her employment, plaintiff regularly observed and complained about the discriminatory treatment of black employees and customers.

In November of 2005, the store at Oak Park began to require new and existing employees to agree to arbitrate employment disputes. The store developed a computer system which allows employees to electronically execute an arbitration agreement. This computer system also contains employee email, work schedules and paycheck information. The system requires employees to create a confidential password so that they may securely access their personal work information. To execute the electronic arbitration agreement, employees must enter their user ID and the confidential passwords which they have created. After executing the agreement, employees receive an email confirming the execution and inviting them to object if the execution was mistaken.

After the Oak Park store instituted the arbitration policy, store personnel repeatedly asked plaintiff to electronically execute the arbitration agreement. One secretary from the administrative office told plaintiff that she would be fired if she did not sign the agreement. Plaintiff refused to do so and continued to work as normal.

Later, after plaintiff missed a day of work without reporting her absence, a secretary informed plaintiff that she could print her work schedule from the computer system. The secretary showed plaintiff how to access the system and had all the passwords and information necessary to access plaintiff's personal work information. The secretary took control of the computer to access plaintiff's work schedule. While she had control of the computer, the secretary told plaintiff that she needed to sign the arbitration agreement. Plaintiff again refused and the secretary moved through several computer screens which plaintiff did not recognize.

Defendants's motion attaches an arbitration agreement executed April 28, 2006, which purports to bear plaintiff's electronic signature. The agreement provides as follows:

> Whereas, Associate and Company desire to resolve any and all disputes between them, as more fully described in the Rules of Arbitration; and
>
> Whereas, the parties hereto agree that Arbitration of such disputes is a valuable benefit, the existence of which is a significant inducement for Associate to continue employment or to accept employment with the Company and for Company to continue employing or to offer employment to Associate.
>
> NOW THEREFORE, in consideration of the mutual promises contained herein and in specific consideration of the Company agreeing to continue to employ or to offer to employ Associate the parties hereto agree as follows:
>
> EFFECTIVE upon Associate's first day of employment with the Company, Associate and Company shall be entitled to the benefits of and mutually agree to become subject to the Company's RULES OF ARBITRATION (the "RULES").
>
> WE AGREE TO ARBITRATE OUR DISPUTES AND TO ABIDE BY THE RULES OF ARBITRATION[.]

Through affidavit, plaintiff states that she never signed such an agreement and that if her electronic signature appears on the agreement, she did not knowingly put it there.

Dillard Store Services terminated plaintiff's employment in March of 2007 because the store manager believed that she had called a supervisor a profane name. Following her termination, plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). On October 3, 2007, the EEOC issued plaintiff a right to sue letter.

On December 28, 2007, plaintiff filed with Dillard's Inc. a notice of intent to arbitrate which indicated that she "[i]ntend[ed] to proceed to Arbitration under the Rules of the Company's Alternative Dispute Resolution Procedure." The statement which plaintiff attached to the notice largely mirrors the allegations which she has made in this case. In a letter dated January 11, 2008, the American Arbitration Association acknowledged receipt of the parties' request for arbitration.

On December 31, 2007, plaintiff filed this action. Defendants seek to dismiss this action in light of the arbitration agreement and the pending arbitration proceeding. In the alternative, defendants seek to stay the litigation pending resolution of the arbitration.

## **Analysis**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 3 of the FAA permits the Court to stay litigation in favor of arbitration as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Id. § 3. The FAA establishes a federal policy favoring arbitration agreements and requires that the court rigorously enforce such agreements. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). The FAA generally applies to employment contracts. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

Normally, on a motion to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration. See ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration). Where the parties dispute whether a valid and enforceable arbitration agreement exists, however, this presumption of arbitrability disappears. Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998). The Court may compel arbitration only when satisfied that the making of the agreement is not at issue. Nat'l

Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004). Generally, state law principles of contract formation govern whether a valid arbitration agreement exists. Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006). Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact. Reimer v. Waldinger Corp., 265 Kan. 212, 214, 959 P.2d 914, 916 (1998).

In seeking to compel arbitration, defendants bear the initial burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. SmartText Corp. v. Interland, Inc., 296 F. Supp.2d 1257, 1263 (D. Kan. 2003). Once defendants have met this burden, plaintiff must show a genuine issue of material fact as to the making of the agreement. Id. Essentially, this creates a summary-judgment-like standard which the Court applies in deciding whether to compel arbitration. See Clutts v. Dillard's, Inc., 484 F. Supp.2d 1222, 1223-24 (D. Kan. 2007) (Courts of Appeals have uniformly applied summary-judgment-like standard to motions to compel arbitration under FAA).

As to defendants' initial burden, the record contains sufficient evidence of an enforceable arbitration agreement. Specifically, defendants attach a copy of the parties' purported agreement which states that they have agreed to arbitrate their disputes under the rules of arbitration which accompany the agreement. The agreement appears to bear plaintiff's electronic signature. Under Kansas law, this electronic signature is legally recognized, K.S.A. § 16-1607(a), and may be attributed to plaintiff as her own act through circumstantial evidence "including a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable," id. § 16-1609(a). In this regard, the record contains evidence that defendants implemented a security procedure by which employees could confidentially and securely execute the arbitration agreement through the workplace computer system. This evidence suggests that plaintiff executed the arbitration agreement and satisfies

defendants' obligation under the first step of the burden-shifting framework.

In response, plaintiff states through affidavit that she did not knowingly sign the arbitration agreement. She recounts an incident in which a company secretary accessed her personal computer records, told her that she needed to sign the arbitration agreement and then moved through several computer screens which she did not recognize. The implication of this evidence is that unbeknownst to plaintiff, the secretary signed the arbitration agreement in plaintiff's name while accessing her records through the workplace computer system. When taken as true, this evidence raises a genuine issue of material fact whether plaintiff actually executed the electronic signature which appears on the arbitration agreement.

Defendants argue that the issue whether plaintiff actually signed the arbitration agreement is immaterial to the validity of the agreement. Because the FAA does not require arbitration agreements to be signed, the presence of an unauthentic signature on such an agreement is not necessarily fatal to its enforceability. See Ketchum v. Almahurst Bloodstock IV, 685 F. Supp. 786, 790 (D. Kan. 1988) (by itself, unauthentic signature does not prevent enforcement of arbitration agreement). Citing Durkin v. Cigna Property & Casualty Corp., 942 F. Supp. 481 (D. Kan. 1996), defendants argue that by continuing her employment with knowledge of the arbitration agreement, plaintiff demonstrated an intent to be bound by the agreement regardless of her signature. In Durkin, the court considered the enforceability of an employer's arbitration policy which was distributed to employees and did not require their signatures. Id. at 483-84. Based on the policy's statement that it was "part of the employment relationship" and the actual notice of the policy afforded the employees, the court found that the arbitration policy had become a binding, enforceable provision of the employment contract. Id. at 488.

Here, the arbitration agreement does not expressly state that it was part of the employment relationship.[1] Further, the record contains no evidence that any person of authority conditioned plaintiff's employment on acceptance of the arbitration agreement.[2] Without evidence that defendants required plaintiff to accept the arbitration agreement as a condition of her employment, the Court cannot find that she demonstrated an intent to be bound by the agreement through continued employment.[3] On this record, defendants have not shown as a matter of law that the parties have a written agreement to arbitrate.

Section 4 of the FAA provides in part that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Invoking this provision, defendants request a trial on the existence of the arbitration agreement. In this regard, the Tenth Circuit has recognized that "[w]hen parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997). Having found a genuine issue of material fact whether plaintiff actually signed the arbitration agreement, the Court finds that a trial on the existence of the agreement is appropriate. Trial is set for **9:30 a.m. on June 10, 2008**, in Courtroom 476, 500 State Avenue, Kansas City, Kansas.

As a procedural matter, Section 4 permits the Court to decide the issue if plaintiff does not

---

[1] That portion of the arbitration agreement which states that the agreement "is a significant inducement for Associate to continue employment . . . and for Company to continue employing . . . Associate" is a reflection of the consideration which each side enjoyed under the agreement. It does not suggest that the agreement was a mandatory condition of employment.

[2] Although a secretary told plaintiff that she would be fired if she did not sign the agreement, the record does not suggest that the secretary had the authority to issue such an ultimatum.

[3] As a separate argument, defendants contend that plaintiff ratified the arbitration agreement by accepting the benefits of employment conditioned on the execution of the agreement. For the reasons just explained, the Court rejects this argument.

demand a jury trial. 9 U.S.C. § 4 ("If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue."); see also Hardin, 465 F.3d at 475 (as party alleged to be in default, only plaintiff may request jury trial).  No later than **May 28, 2008**, plaintiff shall inform the Court whether she requests a jury trial of this matter.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration (Doc. #5) filed January 29, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that this matter shall proceed to trial on the existence of the arbitration agreement.  Trial is set for **9:30 a.m. on June 10, 2008**, in Courtroom 476, 500 State Avenue, Kansas City, Kansas.

**IT IS FURTHER ORDERED** that no later than **May 28, 2008**, plaintiff shall inform the Court whether she requests a jury trial of this matter.

Dated this 21st day of May, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge
