IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| YOLANDA G. KERR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 07-2604-KHV |
| DILLARD STORE SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Yolanda G. Kerr brings suit against Dillard Store Services, Inc., Construction Developers, Inc. and Dillard's Inc. (hereinafter "Dillard's"). Plaintiff alleges that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, defendants discriminated on the basis of race (Count I) and retaliated because she complained of race discrimination (Count II). On January 29, 2008, defendants filed their Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration (Doc. #5). On May 21, 2008, the Court overruled defendants' motion and ordered a jury trial on the issue whether plaintiff had executed an arbitration agreement. See Order (Doc. #22). On October 13, 2008, plaintiff waived her right to a jury trial and consented to a bench trial on that issue. See Plaintiff Kerr's Waiver Of Jury Trial (Doc. #67). On November 12 and 13, 2008, the Court held a bench trial concerning the existence of an enforceable agreement to arbitrate.[1] After careful consideration, the Court makes the following findings of fact and

---

[1] Plaintiff seeks leave to file out of time her proposed findings of fact and conclusions of law. See Unopposed Motion To File Out Of Time By One Half Day Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. #98) filed December 16, 2008. Rule 6(b)(1)(B), Fed. R. Civ. P., provides that "[w]hen an act may or must be done within a specified time, the court may for good cause shown, extend the time . . . on motion made after the time has expired if the party failed to act
(continued...)

conclusions of law, as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure.

## **Findings of Fact**

Dillard's Inc. is the owner of Construction Developers, Inc., which owns Dillard Store Services, Inc. Dillard Store Services conducts business as Dillard's Department Store at the Oak Park Mall in Overland Park, Kansas. Dillard Store Services also conducted business at the Mission Center Mall in Mission, Kansas, until that store closed in November of 2005. From March of 2004 until the fall of 2005, plaintiff (a black woman) worked in customer service at the Mission Center store. Plaintiff signed a paper arbitration agreement when she began her employment with Dillard's in 2004, but none of the parties claim that the paper agreement is enforceable. In the fall of 2005, plaintiff transferred to the Oak Park store.

Since 2004, if not before, Dillard's has required job applicants and employees to agree to arbitrate employment disputes. In October of 2005, Dillard's began to require current and new associates to memorialize their arbitration agreements by executing electronic arbitration agreements through an intranet computer system, mydillards.com. The intranet system was available only to Dillard's associates and was the only means whereby an employee could execute an arbitration

---

[1](...continued)
because of excusable neglect." In determining whether neglect is "excusable," in addition to all other relevant circumstances surrounding a party's omission, the following specific factors must be considered: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay, including whether it was under the control of the movant; and (4) whether the movant acted in good faith. Lewis v. Sprint Nextel, No. 08-2458-JAR, 2008 WL 5263782, at *1 (D. Kan. 2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

Here, the length of plaintiff's delay was less than 24 hours and it did not prejudice defendants in any way. In addition, plaintiff was acting in good faith and had unforeseen computer problems which arose during her attempt to timely file her proposed findings of fact and conclusions of law. Therefore the Court finds that plaintiff's failure resulted from excusable neglect and grants plaintiff's motion.

agreement. To access the intranet each associate had a unique, confidential password that was created by and known only to the associate. Executing the agreement to arbitrate required the associate to (1) enter his or her social security number or associate identification number (AIN); (2) enter his or her secure password and; (3) click the "accept" option at the bottom of the arbitration agreement screen. After the Oak Park store instituted the arbitration policy, store personnel repeatedly asked plaintiff to electronically execute the arbitration agreement.[2] Plaintiff refused to do so because she thought that agreeing to arbitrate had not been a requirement when she was first employed at Dillard's, and she was concerned about "giving up any legal rights." See Trial Tr. 407:10-13.

Dillard's instituted various policies and procedures which were aimed at keeping all sensitive intranet information, especially employee passwords, confidential. Supervisors could log in to an associate's account, however, by resetting the associate's confidential password and logging in under the associate's default password. Dillard's System Security Access Policy, which was included in the paper arbitration agreement which plaintiff executed on her first day of employment, prohibited associates from sharing passwords. The paper arbitration agreement admonished employees not to share userids or passwords and further explained: "[p]asswords are an important aspect of computer security. They are the front line of protection for user accounts. Passwords are to be treated as sensitive, confidential information." Dillard's also posted notices on bulletin boards which advised associates to maintain the confidentiality of their passwords.

On April 26, 2006, plaintiff missed a day of work without reporting her absence. Two days later,

---

[2] Plaintiff claims that Shelly Champlin, a store secretary at the Oak Park store, harassed her and repeatedly told her that she would be fired if she did not sign the arbitration agreement. The Court is not convinced that Champlin harassed plaintiff, but several employees did tell plaintiff that she needed to sign the arbitration agreement and that continued employment was contingent on her execution of the agreement.

on April 28, 2006, the store secretary, Shelly Champlin, instructed plaintiff that she needed to work her assigned schedule.[3] When plaintiff claimed that she did not know that she was scheduled to work on April 26, Champlin told plaintiff that she should access her schedule on the mydillards intranet. Plaintiff responded that she did not know how to do so and that she did not know her password. Shortly thereafter, Champlin accompanied plaintiff to the employee break room to assist her in accessing her schedule on one of three computer kiosks. Champlin reset plaintiff's password to a default password and then stepped away from the keyboard and demonstrated how to access the system. Champlin watched while plaintiff entered her default password to log into her intranet account. Champlin then took control of the computer and navigated through various screens while plaintiff stood next to her at the kiosk. Plaintiff alleges that during this interaction, and without her knowledge, Champlin electronically signed an agreement to arbitrate for plaintiff. Champlin never mentioned an arbitration agreement, however, and plaintiff never saw Champlin execute any such agreement. After the interaction at the computer, plaintiff and Champlin left the employee break room with Champlin following one or two steps behind plaintiff.

According to Dillard's electronic database, plaintiff executed her agreement to arbitrate on April

---

[3] Plaintiff seeks leave of court to have a portion of Champlin's deposition testimony, which was not introduced at trial, included in the record. See Motion To Bring Essential Facts To Court's Attention (Doc. #89) filed November 14, 2008. Plaintiff offers this testimony to establish that Champlin and plaintiff interacted on April 28, 2006, at which time Champlin helped plaintiff access her schedule on a computer kiosk in the employee break room. The Court overrules this motion as moot. The evidence at trial established that this interaction occurred on April 28, 2006, following plaintiff's absence from work on April 26, 2006. See Defendant's Ex. 453; see also Trial Tr. 279:5-8. The evidence from Champlin's deposition testimony is cumulative.

In addition, the Court also overrules Plaintiff's Request For Closing Argument In Bench Trial (Doc. #100) filed January 16, 2008. The Court believes that any presentation of evidence at this point would be cumulative as both parties have had the opportunity to present their proposed findings of fact and conclusions of law, and to present oral argument.

28, 2006, at 3:26 p.m.  Five minutes later, someone opened an email which confirmed plaintiff's execution of the agreement.  The email provided as follows:

> Arbitration Agreement
>
> Thank you for electronically signing your arbitration agreement on 2006-04-28, at 3:26:20 PM.
>
> If you deny that you electronically signed your agreement, please respond immediately.  To respond, select your e-mail "reply" option.
>
> If you fail to deny that you signed your arbitration agreement, you will be deemed to have agreed and signed it personally by electronic signature.

See Ex. 435 at DIL0094, entry 604.

Dillard's records indicate that emails on plaintiff's intranet account were opened on only three occasions: February 10, April 28 and August 24, 2006.  Plaintiff denies that she opened the email about the arbitration agreement and she never responded to it.

Dillard Store Services terminated plaintiff's employment in March of 2007, allegedly because she called a supervisor a profane name.  Following her termination, plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  On October 3, 2007, the EEOC issued plaintiff a right to sue letter.

On December 28, 2007, plaintiff filed with Dillard's Inc. a notice of intent to arbitrate under defendants' alternative dispute resolution procedure.  The statement which plaintiff attached to the notice largely mirrors the allegations which she makes in this case.  On December 31, 2007, plaintiff filed this action.  By letter dated January 11, 2008, the American Arbitration Association acknowledged receipt of the parties' request for arbitration.  Defendants seek to stay the litigation pending resolution of the arbitration proceedings.

## Conclusions Of Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 3 of the FAA permits the Court to stay litigation in favor of arbitration as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Id. § 3. The FAA establishes a federal policy favoring arbitration agreements and requires that the court rigorously enforce such agreements. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). The FAA generally applies to employment contracts. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

Typically, on a motion to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration. See ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration). Where the parties dispute the existence of a valid and enforceable arbitration agreement, however, this presumption of arbitrability disappears. Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998). The Court may compel arbitration only when satisfied that the making of the agreement is not at issue. Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004). Generally, state law principles of contract formation govern whether a valid arbitration agreement exists. Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006). Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact. Reimer v.

Waldinger Corp., 265 Kan. 212, 214, 959 P.2d 914, 916 (1998).

Plaintiff argues that she never executed the electronic arbitration agreement and that her purported signature is not valid. She also argues that even if her electronic signature is valid, the agreement violates public policy because it denies her various discovery tools which are available under the Federal Rules of Civil Procedure.

## I.      Existence Of Electronic Arbitration Agreement

Plaintiff claims that she did not knowingly execute the electronic arbitration agreement and that it is therefore invalid.

In seeking to compel arbitration, defendants bear the burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. SmartText Corp. v. Interland, Inc., 296 F. Supp.2d 1257, 1263 (D. Kan. 2003). When parties dispute the making of an agreement to arbitrate, a trial is necessary if the material facts are disputed. Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997).

Kansas law defines an electronic signature as "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." K.S.A. § 16-1602(i). An electronic signature is legally recognized, K.S.A. § 16-1607(a), and may be attributed to plaintiff as her own act through circumstantial evidence "including a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable," id. § 16-1609(a). Further, the effect of an electronic signature is determined from the context and surrounding circumstances at the time of its execution, including the parties' agreement. Id. § 16-1609(b). A party cannot void a contract by claiming to be ignorant of its contents. Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1157 (10th Cir. 1994).

-7-

Defendants have not demonstrated by a preponderance of the evidence that plaintiff knowingly and intentionally executed an arbitration agreement. The Court is not suggesting that Champlin executed plaintiff's electronic agreement, either fraudulently or by mistake. It is difficult to believe that Champlin would have fraudulently executed the agreement with plaintiff standing at her elbow, and the record suggests no credible reason why she would have done so. In fact, during her interaction with Champlin, plaintiff may have executed the agreement intentionally or by mistake, by clicking the "accept" button. By her own admission, plaintiff was not paying attention. Trial Tr. 354:4-8 and 19-21. At the same time, it is hard to believe that after steadfastly refusing to execute the arbitration agreement for five or six months, plaintiff spontaneously reversed her decision while she was standing with Champlin at the computer kiosk on April 28. The record contains no evidence that Champlin or plaintiff clicked the "accept" button by mistake and thus inadvertently executed the arbitration agreement, or that either of them opened or read the email which arrived several minutes later. The Court therefore declines to attribute the purported electronic signature to plaintiff.

The problem with Dillard's position is that it did not have adequate procedures to maintain the security of intranet passwords, to restrict authorized access to the screen which permitted electronic execution of the arbitration agreement, to determine whether electronic signatures were genuine or to determine who opened individual emails. While the record establishes that Champlin and plaintiff were at the kiosk on April 28, it does not show that they were there at precisely 3:26:20 p.m. Therefore, it is not inconceivable Champlin or a supervisor logged on to plaintiff's account and executed the agreement. The Court recognizes that defendants' burden of proof is not absolute certainty, but merely a preponderance of the evidence. At the same time, Dillard's has not demonstrated the efficacy of its security procedures with regard to electronic signatures. Therefore, its version of events is no more

likely true than plaintiff's. For these reasons, this case basically turns on the burden of proof. Dillard's has the burden of proof and its evidence that plaintiff executed the arbitration agreement is not persuasive. On this record, the Court cannot find that it is more likely than not true that plaintiff executed the electronic agreement to arbitrate.

**II.     Enforceability Of Electronic Arbitration Agreement**

Plaintiff asserts that even if her electronic signature is valid, the agreement to arbitrate claims is unenforceable as a matter of public policy with respect to federal claims based on violations of anti-discrimination statutes. See Plaintiff's Proposed Findings Of Fact And Conclusions Of Law (Doc. #97) at 14, filed December 16, 2008. Plaintiff claims that the electronic arbitration agreement reserves to the arbitrator unlimited discretion to allow or deny discovery and therefore denies plaintiff rights available under Rule 26, Fed. R. Civ. P.

Section 10, 9 U.S.C., governs the enforceability of an arbitration award and provides that, "the United States court in and for the district wherein [an arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Generally, arbitration proceedings are not constrained by formal rules of procedure or evidence. Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992). Further, where an arbitration agreement limits the scope of discovery which would otherwise be available under the Federal Rules of Civil Procedure, this limitation does not violate public policy merely because the agreement does not require all discovery tools available under Rule 26, Fed. R. Civ. P. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (limited discovery permissible because age discrimination claims did not require more extensive discovery than other

claims found to be arbitrable); see also Sobol v. Kidder, Peabody & Co., Inc., 49 F.Supp.2d 208, 223 (S.D.N.Y.,1999) (limited scope of pre-arbitration discovery did not warrant vacating arbitration decision in employment discrimination claim).

Dillard's agreement to arbitrate includes the following provision concerning pre-hearing discovery:

> You and the Company can require each other to:
>
> • Provide relevant documents.
> • Answer questions.
> • Ensure the attendance of and ask questions of witnesses (including any expert witnesses) under oath at depositions.
>
> You and the Company are each entitled to know who the other witnesses will be and to see all relevant documents before the arbitration hearing. Before the hearing, the arbitrator will require you and the Company to submit to each other in writing (by the dates selected by the arbitrator) the names and addresses of any witnesses to be called, documents to be presented and a list of all exhibits to be used at the hearing.
>
> The arbitrator may decide the form, amount and frequency of discovery permitted before the hearing, giving due consideration to:
>
> • The proof requirements imposed by the law on the party making the claim or defense.
> • Both your and the Company's desire for a quick and cost-effective alternative to courtroom litigation.
> • Any other factors the arbitrator believes are appropriate.
>
> Pre-hearing discovery may take any form allowed by the Federal Rules of Civil Procedure, subject to any restrictions the arbitrator imposes to meet the objectives of the arbitration process.

See Ex. 400 at 4-5.

While the pre-hearing discovery provision does permit the arbitrator to potentially limit the scope of discovery, plaintiff's contention that she will be denied the "tools necessary to obtain evidence essential to proving a claim of racial discrimination" is unfounded. Nothing in the pre-hearing discovery provision creates a per se limitation on the discovery tools available to the parties prior to arbitration.

The provision provides all forms of discovery allowable under the Federal Rules of Civil Procedure and does not expressly limit any type of discovery. The mere fact that the arbitrator reserves the right to tailor discovery to serve the purposes of arbitration does not in any way offend public policy. The same is essentially true with regard to judges in federal lawsuits. Further, plaintiff cites no precedent that race discrimination claims are entitled to a heightened opportunity for discovery during the arbitration process. Considering all these factors, the Court finds that the arbitration agreement does not offend public policy and would be enforceable against plaintiff if Dillard's had presented persuasive evidence that she executed it.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration (Doc. #5) filed January 29, 2008 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion To Bring Essential Facts To Court's Attention (Doc. #89) filed November 14, 2008, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Unopposed Motion To File Out Of Time By One Half Day Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. #98) filed December 16, 2008, be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Request For Closing Argument In Bench Trial (Doc. #100) filed January 16, 2008, be and hereby is **OVERRULED**.

Dated this 17th day of February, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge