## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| YOLANDA G. KERR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 07-2604-KHV** |
| DILLARD STORE SERVICES, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On November 12 and 13, 2008, the Court tried this action to enforce an alleged arbitration

agreement between Yolanda G. Kerr and Dillard Store Services, Inc., Construction Developers, Inc. and

Dillard's Inc. (hereinafter "Dillard's").  On February 17, 2008, the Court issued findings of fact and

conclusions of law, finding that Dillard's had not carried its burden of proving that Kerr had executed

an agreement to arbitrate.  See Memorandum And Order (Doc. #103) filed February 17, 2009 at 9.  This

matter is before the Court on Defendants' Rule 52(b) Motion For Additional And Amended Findings

Of Fact And Conclusions Of Law (Doc. #104) filed March 2, 2009.

On July 2, 2003, Dillard's instituted an arbitration policy to resolve certain disputes with current

and future employees.  See Defendants' Exhibit 403.  The policy was administered and recorded in

paper format.  Id.  Plaintiff began her employment with Dillard's on March 23, 2004.  See Trial Tr. 4:1-

15.  That same day, she signed an Agreement To Arbitrate Certain Claims that she and Dillard's

intended to bind her to the arbitration policy.  See Defendants' Exhibit 402.[1]

---

[1]    Dillard's does not seek to enforce the 2004 agreement, but cites it as an example that
plaintiff was on notice that arbitration was a condition of employment.  See Defendants' Reply In
Support Of Their Proposed Findings Of Fact And Conclusions Of Law (Doc. #99) filed December 23,
(continued...)

On October 1, 2005, Dillard's introduced an electronic arbitration agreement.  It consists of "Rules of Arbitration and Agreement To Arbitrate Certain Claims," a 10-page document identified as Defendant's Exhibit 400.  The first nine pages contain "Rules of Arbitration" and the final page is a so-called "Agreement To Arbitrate Certain Claims."  The Court refers to the entire 10-page document as the "arbitration agreement," which, in its terms, is virtually identical to the 2003 agreement.

I.      **Proposed Additional Or Amended Findings Of Fact**

Defendants ask the Court to amend three findings of fact from its order of February 17:

(1) that "[s]upervisors could log in to an associate's account . . . by resetting the associate's confidential password and logging in under the associate's default password;"

(2) that "plaintiff may have executed the agreement . . . by mistake, by clicking the 'accept' button;" and

(3) that the arbitration agreement was accessible to Champlin and Kerr during the intranet tutorial at the kiosk station.

A.      **Supervisor Log In Capability**

Defendants argue that the weight of the evidence does not support a finding that "[s]upervisors could log in to an associate's account . . . by resetting the associate's confidential password and logging in under the associate's default password."  See Memorandum And Order (Doc. #103) at 3.

Defendants admit that store manager James Macumber had password re-setting authority and delegated it to Shelly Champlin, a store secretary.  Id.  Champlin testified that store managers, store secretaries and assistant managers had authority to reset passwords.  Trial Tr. 310:12-13.  Defendants do not deny that Macumber, Champlin and assistant store manager Dave Riddle could reset employee passwords.  See Defendants' Reply Supporting Its Rule 52(b) Motion For Additional And Amended

---

[1](...continued)
2008 at 2.

Findings Of Fact And Conclusions Of Law ("Defendants' Reply") (Doc. #113) filed March 30, 2009 at 2-3.

Defendants argue that the record contains no evidence that "supervisors" had the ability or authority to reset passwords, see Memorandum In Support Of Defendant's Motion For Additional And Amended Findings Of Fact And Conclusions Of Law Under Rule 52(b) ("Defendant's Memorandum") (Doc. #105) at 5, and they insist that only three groups of people had password-resetting authority: (1) designated individuals in Little Rock, Arkansas, (2) store managers and (3) persons to whom store managers delegated that authority. Id.

Defendants do not dispute that Macumber could delegate password-resetting authority to any employee and that he delegated that authority to Riddle and Champlin. Apparently, their argument is that plaintiff's shift supervisor at the Oak Park store did not have authority to reset employee passwords. That may be true, but defendants miss the point: that employees other than plaintiff could reset her password, and some of them (Macumber and Riddle) were plaintiff's supervisors.

### B.    Plaintiff's Execution Of the Agreement

Defendants argue that the Court should amend its finding of fact that "plaintiff may have executed the agreement intentionally or by mistake, by clicking the 'accept' button." See Memorandum And Order (Doc. #103) filed February 17, 2009 at 8. Defendants argue that plaintiff could not have inadvertently signed the arbitration agreement because the intranet system required plaintiff to enter her social security number and password before clicking the "Agree" button. The Court previously described the login process in detail and included a summary that is virtually identical to that discussed in defendants' motion. See Memorandum And Order (Doc. #103) at 3.

In its findings of fact, the Court accurately described the process by which Dillard's employees

could log in to their intranet accounts.  Defendants do not dispute the accuracy of that summary and it is true, at least hypothetically, that plaintiff might have executed the agreement intentionally or by mistake.  The record contains no satisfactory evidence that she ever executed the agreement, however, and Dillard's did not carry its burden of proving by a preponderance of the evidence that she did so *intentionally*.

### C.   Accessibility Of Arbitration Agreement To Kerr And Champlin

Defendants argue that the Court incorrectly made an "implicit finding" that plaintiff and Champlin had access to the arbitration agreement during the tutorial at the computer kiosk.  Defendants assert that for them to access the arbitration agreement, one or both of them would have had to (1) reset plaintiff's password to the default;[2] (2) log in using the default, which required confidential information from plaintiff; (3) select a new password; (4) log out; (5) log in with the new password and execute the arbitration agreement using the new password; and (6) have the password reset to the default to "cover their tracks."  Trial Tr. 422:10-23, 427:5-11; see also Defendants' Memorandum (Doc. #105) at 8.

The Court did not find that plaintiff or Champlin accessed the arbitration agreement while they were together at the kiosk.  See Memorandum And Order (Doc. #103) at 8.  Also, the Court did not make an explicit finding on who signed the arbitration agreement, or how.  Id. at 7-9.  The evidence on that issue was inconclusive.  For that reason, the Court held that defendants failed to establish by a preponderance of the evidence that plaintiff knowingly and intentionally executed the arbitration agreement.  Id. at 8.

## II.   Proposed Amended Conclusion Of Law

---

[2]      According to Dillard's manager of web services, Thomas Autrey, plaintiff's password was inactive and had to be reset to a default password so that she could access her intranet account. Trial Tr. 166:22, 200:15-20.

**A.      Enforcement By Continued Employment**

Defendants correctly argue that the Court did not address its alternative argument that the arbitration agreement was enforceable without plaintiff's signature.  See Defendants' Memorandum (Doc. #105) at 1-5; see also Defendants' Reply (Doc. #113) at 1-2.

Dillard's references an earlier order in which the Court addressed this issue as follows:

> Defendants argue that the issue whether plaintiff actually signed the arbitration agreement is immaterial to the validity of the agreement.  Because the FAA does not require arbitration agreements to be signed, the presence of an unauthentic signature on such an agreement is not necessarily fatal to its enforceability.  See Ketchum v. Almahurst Bloodstock IV, 685 F. Supp. 786, 790 (D. Kan. 1988) (by itself, unauthentic signature does not prevent enforcement of arbitration agreement).  Citing Durkin v. Cigna Property & Casualty Corp., 942 F. Supp. 481 (D. Kan. 1996), defendants argue that by continuing her employment with knowledge of the arbitration agreement, plaintiff demonstrated an intent to be bound by the agreement regardless of her signature.  In Durkin, the court considered the enforceability of an employer's arbitration policy which was distributed to employees and did not require their signatures.  Id. at 483-84.  Based on the policy's statement that it was "part of the employment relationship" and the actual notice of the policy afforded the employees, the court found that the arbitration policy had become a binding, enforceable provision of the employment contract.  Id. at 488.  Here, the arbitration agreement does not expressly state that it was part of the employment relationship.  Further, the record contains no evidence that any person of authority conditioned plaintiff's employment on acceptance of the arbitration agreement.  Without evidence that defendants required plaintiff to accept the arbitration agreement as a condition of her employment, the Court cannot find that she demonstrated an intent to be bound by the agreement through continued employment.  On this record, defendants have not shown as a matter of law that the parties have a written agreement to arbitrate.

See Memorandum And Order (Doc. #22) filed May 21, 2008 at 6-7.

Dillard's asks the Court to enter additional findings of fact and conclusions of law to facilitate appellate review of the issue whether the arbitration agreement was enforceable without plaintiff's signature.  See Defendants' Memorandum (Doc. #105) at 4.  Specifically, Dillard's asks the Court to consider evidence that it required plaintiff to accept the agreement as a condition of her employment.  Id.  Defendants' evidence includes testimony from assistant store manager Robert Butterworth that

during plaintiff's orientation, Dillard's informed new associates about the 2003 arbitration agreement and gave them copies of it.  See Trial Tr. 30:1-21; 33:21-34:20.  Defendants maintain that they communicated to plaintiff and other employees – through bulletins, an intranet log-on system and electronic messages from a clock-in/clock-out system – that the 2005 arbitration agreement was a condition of continued employment.  See Exs. 406, 422 and 438; Trial Tr. 107:10-108:20; 130:17-23; 133:6-24; 179:12-24.  Relying on Durkin v. Cigna Property & Casualty Corp., 942 F. Supp. 481 (D. Kan. 1996), defendants argue that plaintiff's continued employment and her awareness of the arbitration agreement were enough to bind her to it.  See Defendant's Reply (Doc. #113) at 1 (citing Durkin, 942 F. Supp. 481 (D. Kan. 1996)).  In response, plaintiff argues that during her employment with Dillard's, management circulated numerous arbitration agreements, see Trial Tr 134:2-15, and that it is not clear which agreement is arguably enforceable here.  Plaintiff further argues that since defendants had a policy of encouraging employees to *sign* written arbitration agreements they obviously did not have a policy that employees accepted the agreement solely by continued employment.

In Durkin, this Court found a binding agreement to arbitrate where (1) the language of the arbitration policy purported to create a contractual duty, (2) plaintiff had actual notice of the policy and (3) the obligation to arbitrate was mutual.  942 F.Supp. at 488.  The Court ruled that plaintiff's continued employment provided sufficient consideration to create an enforceable contract and that plaintiff was bound because she was aware of the policy that continued employment constituted acceptance of the agreement to arbitrate.  Durkin v. CIGNA Prop. & Cas. Corp., 942 F. Supp. 481, 488 (D. Kan. 1996) (citing  Sweet v. Stormont Vail Reg. Medical Ctr., 231 Kan. 604, 611, 647 P.2d 1274, 1280 (1982)). The Tenth Circuit has held that where an employee refuses to sign an arbitration agreement but continues her employment, she assents to the terms of the arbitration agreement if the employer

-6-

explicitly states that continued employment constitutes acceptance of the agreement and informs the employee that failure to sign it does not alter the effect of the agreement.  See Hardin v. First Cash Fin. Servs., 465 F.3d 470, 478 (10th Cir. Okla. 2006) (citing Berkley v. Dillard's Inc., 450 F.3d 775, 777 (8th Cir. 2006)).[3]  In Berkley, the Eighth Circuit Court of Appeals interpreted a Dillard's arbitration policy that is almost identical to the arbitration agreement in this case.  The employee in Berkley refused to sign a form which acknowledged her receipt of the Rules of Arbitration and stated that "[e]mployees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith."  See Berkley, 450 F.3d at 776.  In addition, Dillard's had informed the employee that refusing to sign would have no effect on the applicability of the arbitration agreement because it applied automatically to all employees who continued their employment.  Id.  Dillard's also provided the employee a copy of its Fairness In Action Program which stated that "by accepting or continuing employment with Dillard's, you have agreed to accept the Program known as the Agreement to Arbitrate Certain Claims."  Id.  The Eighth Circuit held that the employee's continued employment constituted acceptance of the arbitration agreement and that the employee's refusal to sign the acknowledgment form was irrelevant because the acknowledgment form,

---

[3]         In Hardin, the employer's arbitration agreement included the following provision:

I understand that by so notifying the Director of Human Resource [sic], I will not be bound to this Agreement, unless I continue my employment with the Company after March 1, 2003.  I recognize that if I sign the Agreement and do not withdraw within three days of signing, or if I continue my employment with the Company after March 1, 2003, I will be required to arbitrate, as explained above, employment-related claims, which I may have against the Company. . . .

See Arbitration Agreement, attached Ex. A-1 to Defendant's Motion To Compel Arbitration & Abate Proceedings Pending Arbitration (Doc. #28) filed December 13, 2004 in Case No. 04-Civ-421 (W.D. Okla.).

the Fairness In Action policy and Dillard's supervisors had explicitly and unambiguously notified the employee that continued employment (not her signature) bound her to the Rules of Arbitration.  Id. at 777.

A party who seeks to enforce an arbitration agreement must provide evidence that the party to be bound had actual notice of the policy that continued employment constitutes agreement to the terms of arbitration.  See Lynn v. GE, No. 03-2662-DJW, 2005 U.S. Dist. LEXIS 5108 at *25 (D. Kan. Jan. 20, 2005).  In Lynn, the employer argued that all employees were informed of the mandatory arbitration policy through letters sent to their homes, the employee newsletter, a posting on the company intranet site and emails.  Id. at *5-6.  Plaintiffs disputed that notice, arguing that they never received the letters, read the newsletter, accessed the information on the intranet or read the emails.  Id. at *6.  The employer did not dispute plaintiffs' lack of actual notice and the Court held that mere dissemination of the policy was insufficient to establish a binding agreement.  Id. at *25.

Here, the arbitration agreement does not state that arbitration is part of the employment agreement,  that an agreement to arbitrate is required for continued employment or that the arbitration agreement will become effective through continued employment without plaintiff's signature.  The 2005 arbitration agreement provides in relevant part as follows:

> AGREEMENT TO ARBITRATE CERTAIN CLAIMS
>
> READ IT CAREFULLY BEFORE SIGNING
>
> This Agreement is NOT an employment agreement, it is merely an agreement to arbitrate claims.  The typewritten name in the "Authorized Signature" line below will serve to bind Dillard's to uphold its obligations under this Agreement.
>
> Whereas the parties hereto agree that Arbitration of . . . disputes is a valuable benefit, the existence of which is a significant inducement for Associate to continue employment . . . and for Company to continue employing . . . Associate.

NOW THEREFORE, in consideration of the mutual promises contained herein and in specific consideration of the Company agreeing to continue to employ or to offer to employ Associate the parties hereto agree as follows:

[T]o become subject to the Company's RULES OF ARBITRATION (the "RULES").

WE AGREE TO ARBITRATE OUR DISPUTES AND TO ABIDE BY THE RULES OF ARBITRATION.

See Defendant's Ex. 400 at 12.  As noted, the arbitration agreement stipulates that in return for plaintiff's agreement to arbitrate, Dillard's agrees to "continue to employ" plaintiff; it does not stipulate that continued employment itself constitutes an agreement to arbitrate.  Likewise, defendants' bulletins, intranet systems and clock-in/clock-out system did not unambiguously communicate to plaintiff that continued employment would bind her to the arbitration agreement even if she did not execute it.  As evidence that employees agreed to arbitrate through continued employment, defendants cite a break room notice.  Exhibit 406, dated February 25, 2005, is a bulletin from the Oak Park break room which stated as follows:

By virtue of having accepted employment with the Company and/or continuing employment therewith and/or by entering your personal password and/or your Social Security Number to gain access to the Dillard's Communication System and/or the Dillard's Time Entry System, you acknowledge that you have received and have agreed (and that you thereby continue to agree) to the provisions of the Rules of Arbitration.

All Associates are, therefore, subject to and bound by the Rules of Arbitration.  It is your responsibility to obtain a copy of the Rules from your supervisor.

Dillard's cites no evidence that plaintiff saw or read this notice.  In addition, because the notice is dated February of 2005,  eight months before the arbitration agreement which is Exhibit 400, it is not clear that the bulletin relates to the arbitration agreement which defendants seek to enforce.

As further evidence that plaintiff knew that continued employment constituted an agreement to arbitrate, defendants cite their intranet system.  Exhibit 422 is an undated screen shot from Dillard's

intranet log-in which states as follows:

> Set forth below are the new Rules of Arbitration and Arbitration Agreement for your review and electronic signature.
>
> THIS IS NOT OPTIONAL.  YOU MUST ELECTRONICALLY SIGN THE AGREEMENT BY ENTERING YOUR PERSONAL PASSWORD AND CLICKING ON THE "I AGREE" BUTTON AT THE END OF THE DOCUMENT.
>
> YOUR AGREEMENT TO DILLARD'S RULES OF ARBITRATION, WHICH REQUIRE MANDATORY AND BINDING ARBITRATION OF COVERED CLAIMS AND A WAIVER OF RIGHT TO ACCESS A JUDICIAL FORUM, IS A CONDITION OF YOUR CONTINUED EMPLOYMENT
>
> Immediately after this paragraph are the Rules of Arbitration and Agreement.  Please click "Print" below for a copy of the Rules of Arbitration and Agreement, which you should read carefully and understand before you agree to be bound thereby.  By entering your personal password and clicking the "I Agree" button at the end of the Agreement, you are representing that you have carefully read and fully understand the Rules of Arbitration and Agreement, and that you knowingly and voluntarily enter into this Agreement with the intent to be bound by it, which means you understand that you are agreeing to submit covered claims to binding arbitration and to waive a right to a judicial forum.

This notice purports to condition continued employment on *execution* of the agreement to arbitrate.

Further, defendants cite no evidence that plaintiff saw or read this notice.

Finally, defendants cite a notice on their clock-in/clock-out system which instructs employees that by logging in, they acknowledge that they electronically signed the arbitration agreement and agree to the terms of the agreement in consideration of continued employment.  Exhibit 438, dated October 19, 2005, is a screen shot from Dillard's clock-in/clock-out system which states as follows:

> IMPORTANT NEW NOTICE
> THIS SCREEN LEGALLY BINDS YOU.  PLEASE READ CAREFULLY.
>
> BY ENTERING MY SSN TO GAIN ACCESS TO THE DILLARD'S TIME ENTRY SYSTEM, I ACKNOWLEDGE AND AGREE THAT: I PERSONALLY AND NO ONE ELSE ELECTRONICALLY SIGNED THE DILLARD'S ARBITRATION AGREEMENT AND, IN CONSIDERATION OF CONTINUING EMPLOYMENT, I AGREE TO THE ARBITRATION AGREEMENT AND THE RULES OF

ARBITRATION PUBLISHED ON 10/1/05 . . .

This notice is problematic for several reasons.  First, Dillard's did not establish that plaintiff read this notice.  <u>See</u> Trial Tr. 380:17-381:6.  Second, the notice is ambiguous: it appears to require plaintiffs signature to bind her to the arbitration agreement while simultaneously providing that continued employment constitutes an agreement to arbitrate.  Dillard's did not provide plaintiff a copy of its Fairness In Action policy (on which the Eighth Circuit relied in <u>Berkley</u>) and did not prove that plaintiff was made aware that continued employment (without a signature) was enough to bind her to the arbitration agreement.  Dillard's continues to use the so-called Acknowledgment Of Receipt Of Rules Of Arbitration, on which the Eighth Circuit relied in <u>Berkley</u>.  <u>See</u> Exs. 444, 464, 465 and 490.  It failed to demonstrate, however, that this plaintiff ever read or signed the form.

In summary, defendants' notices do not unambiguously state that continued employment constitutes assent without a signed agreement.  Moreover, on this record, it is not clear that plaintiff was necessarily aware of the notices.  At trial, plaintiff admitted that store personnel informed her of the agreement to arbitrate and told her that if she did not *sign* the agreement, she would be fired.  <u>See</u> Trial Tr. 343:5-346:4.  Store personnel apparently did not tell plaintiff that continued employment constituted an agreement to arbitrate and that she would be bound to arbitrate even if she refused to execute the arbitration agreement.  Plaintiff therefore had no unambiguous notice that as of a specific date, continued employment would substitute for her signature and manifest assent to the arbitration agreement.  Accordingly, the Court cannot find that continued employment bound plaintiff to arbitrate this dispute.

**IT IS THEREFORE ORDERED** that <u>Defendants' Rule 52(b) Motion For Additional And Amended Findings Of Fact And Conclusions Of Law</u> (Doc. #104) filed March 2, 2009 be and hereby

is **SUSTAINED IN PART AND OVERRULED IN PART**.

Dated this 17th day of August, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge